# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CENTER FOR FOOD SAFETY,<br>660 Pennsylvania Ave SE #402<br>Washington, DC 20003 | ) ) ) ) | |
| *Plaintiff,* | ) ) | Case No.  18-2783 |
| vs. | ) ) ) ) | **COMPLAINT FOR DECLARATORY<br>AND INJUNCTIVE RELIEF** |
| UNITED STATES DEPARTMENT<br>OF AGRICULTURE<br>FARM SERVICE AGENCY,<br>1400 Independence Avenue, S.W.<br>Washington, D.C. 20250 | ) ) ) ) ) ) | |
| *Defendant.* | ) ) ) | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## I.      NATURE OF ACTION

1.          The Center for Food Safety (CFS)—a nonprofit public interest and
environmental advocacy organization working to protect human health and the environment—
brings this civil action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552,
challenging the United States Department of Agriculture (USDA), and its component agency, the
Farm Service Agency (FSA), in the unlawful withholding of records concerning environmental
review of industrial-scale agricultural operations funded by the agency.

2.          CFS filed a FOIA request with the USDA to gain a better
understanding of the FSA's compliance with National Environmental Policy Act (NEPA) and the
actions it approves through Environmental Screening Worksheets, which memorialize the FSA's
compliance with NEPA. The goal of the request was to open the operations and activities of
government to public scrutiny and contribute significantly to the public's understanding of the
agency's actions.

3.          The FSA continues to violate FOIA by failing to produce records in
response to CFS's FOIA request, failing to conduct an adequate search for responsive records,
failing to waive fees associated with the search for and disclosure of responsive records, and by
failing to provide both an initial determination as to the scope of the records to be produced or
withheld, and an estimated date by which the agency's search will be complete.

4.          The FSA's unlawful withholding of public records undermines FOIA's
basic purpose of government transparency. Because prompt access to these records is necessary
to effectuate FOIA's purpose, CFS seeks declaratory relief establishing that the FSA is in

violation of FOIA, and injunctive relief directing the FSA to provide responsive records without any further delay.

## II.    JURISDICTION AND VENUE

5.    This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

6.    Venue properly vests in this Court pursuant to 5 U.S.C. § 552(a)(4)(B), which expressly provides a venue for FOIA cases in the District Court of the District of Columbia.

7.    Declaratory relief is appropriate under 28 U.S.C. § 2201.

8.    Injunctive relief is appropriate under 28 U.S.C. § 2202 and 5 U.S.C. § 552(a)(4)(B).

## III.    PARTIES

9.    Plaintiff CFS is a national 501(c)(3) nonprofit public interest and environmental advocacy organization that works to address the impacts of our food production system on human health, animal welfare, and the environment. CFS works to achieve its goals through grassroots campaigns, public education, media outreach, and litigation. Through nearly two decades of involvement in technical analysis, environmental litigation, and policymaking as it relates to food, water, and environmental impacts, CFS has demonstrated its ability to take technical information provided by government agencies and distill it into a format that is accessible to the public. CFS employs science and policy experts who have analyzed FOIA, the

National Environmental Policy Act (NEPA), and other environmental and scientific reports for

their entire careers. CFS publishes reports on a variety of topics, including the adverse effects of

industrial agriculture, that tend to be difficult for the layperson to understand without

professional assistance. CFS and its members are harmed by the FSA's violations of FOIA, as

such violations preclude CFS from gaining a full understanding of FSA's compliance with

NEPA when providing loans to concentrated animal feeding operations (CAFOs), and prevents

CFS from disseminating information to the public concerning FSA's compliance with NEPA.

10.        Defendant, the USDA, is a cabinet-level agency within the Executive

Branch of the United States Government and includes its component agency the FSA. The FSA

is in possession and control of the records that CFS seeks, and is an agency within the meaning

of 5 U.S.C. § 552(f)(1). The USDA and its component agency, the FSA, are therefore subject to

FOIA.


#### IV.    LEGAL BACKGROUND

11.        The basic purpose of FOIA is to promote government transparency and

public oversight of agency action. The statute effectuates this objective by establishing the

public's right to access all federal agency records unless such records may be withheld pursuant

to one of nine, narrowly construed exemptions. 5 U.S.C. § 552(b)(1)-(9).

12.        FOIA imposes stringent deadlines on federal agencies with regard to

making initial determinations in response to FOIA requests. Within twenty working days of

receiving a FOIA request, an agency must determine whether it will release the requested

records, and must notify the requester of its determination, the reasons for its decision, and the

requester's right to appeal an adverse decision to the head of the agency. *Id*. § 552(a)(6)(A).

13.          Congress has specified certain limited instances in which federal agencies may extend this twenty-working-day deadline. First, an agency may toll the deadline to seek additional information or clarification from a requester, but that tolling period ends when the agency receives such information or clarification. *Id.* § 552(a)(6)(A)(ii). Second, in "unusual circumstances" an agency may extend the deadline no more than ten additional working days by providing written notice to the requester that sets forth the circumstances justifying the extension. *Id.* § 552(a)(6)(B)(i).

14.          FOIA requires that a determination under 5 U.S.C. § 552(a)(6)(A) "must be more than just an initial statement that the agency will generally comply with a FOIA request and will produce non-exempt documents and claim exemptions in the future." *Citizens for Responsibility and Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013).

15.          For a determination to trigger the administrative exhaustion requirement, the agency must at least "(i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *Id*. at 188.

16.          If the agency fails to respond within the applicable time limit, the requester "shall be deemed to have exhausted his administrative remedies." 5 U.S.C. § 552(a)(6)(C)(i).

17.         Such constructive exhaustion[1] "allows immediate recourse to the courts to compel the agency's response to a FOIA request." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 62, 64 (D.C. Cir. 1990).

18.         The court "then has the authority to oversee and supervise the agency's progress in responding to the request." *Seavey v. DOJ*, Case No. 15–1303, 2017 WL 3112816, *2 (D.D.C. July 20, 2017) (citing *Citizens for Responsibility and Ethics in Washington*, 711 F.3d at 189); *see also Clemente v. FBI*, 71 F. Supp. 3d 262, 269 (D.D.C. 2014) (a court "may use its equitable powers to require the agency to process documents according to a court-imposed timeline.").

19.         FOIA requires each agency to search for records in a manner that is reasonably calculated to locate all records that are responsive to the FOIA request. 5 U.S.C. § 552(a)(3)(C)-(D).

20.         With regard to production of responsive records, "FOIA requires that the agency make the records 'promptly available,' which depending on the circumstances typically would mean within days or a few weeks of a 'determination,' not months or years." *Citizens for Responsibility and Ethics in Washington,* 711 F.3d at 188 (citing 5 U.S.C. § 552(a)(3)(A), (a)(6)(C)).

21.         In certain limited instances, an agency may withhold records or portions of records pursuant to nine specific exemptions. 5 U.S.C. § 552(b). These exemptions must be "construed narrowly in keeping with FOIA's presumption in favor of disclosure." *Pub. Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 869 (D.C. Cir. 2010).

---

[1] "Constructive exhaustion is determined by the actions (or lack thereof) an agency has taken by the time a suit is filed in the district court." *Wisdom v. U.S. Tr. Program*, 232 F. Supp. 97, 113 (D.D.C. 2017) (citing *Oglesby*, 920 F.2d at 64).

22.        FOIA places the burden on the agency to prove that it may withhold responsive records or portions of records from a requester. 5 U.S.C. § 552(a)(4)(B).

23.        FOIA provides this Court jurisdiction "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id.* § 552(a)(4)(B).

24.        In addition, FOIA provides a waiver for fees associated with the procurement of documents subject to FOIA requests. Such fee waivers are granted "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." *Id.* § 552(a)(4)(A)(iii).

25.        Agency decisions regarding whether fee waiver criteria is satisfied must be in keeping with the purpose of the fee waiver amendments, which were enacted to allow further disclosure to nonprofit, public interest organizations. *See* 132 Cong. Rec. S. 14270-01, (statement of Sen. Leahy) ("[A]gencies should not be allowed to use fees as an offensive weapon against requesters seeking access to Government information."). Furthermore, "Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) (citing *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir. 1987) (citing Sen. Leahy) (quotations omitted).

26.        Finally, FOIA requires that the agency provide "information about the status of a request . . . including . . . an estimated date on which the agency will complete action on the request." 5 U.S.C. § 552(a)(7)(B)(ii).

## V.   FACTUAL BACKGROUND

27.          On March 23, 2017, CFS submitted a FOIA request to the FSA, seeking "All environmental screening worksheets completed since August 3, 2016" (March 23 FOIA Request). In addition, the March 23 FOIA Request asked that the FSA waive all fees in connection with the procurement of this information, because fee waiver criteria was met pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). CFS explained that release of the requested records was in the public's best interest because disclosure would significantly contribute to public understanding of the operations or activities of government, and because obtaining the information was of no commercial interest to CFS.

28.          An initial determination on the March 23 FOIA Request was due by April 20, 2017, twenty working days after the date CFS submitted the request.

29.          On March 27, 2017, the FSA sent an email to CFS confirming receipt of the March 23 FOIA Request. On this same day, the FSA sent an additional email, identifying the request as "complex," therefore requiring more than 20 working days to respond. The FSA expressed that the agency hoped to respond by April 20, 2017, as required by 5 U.S.C. § 552(a)(7)(B)(ii). In a third email on March 27, 2017, the FSA described CFS's request as "overly broad," and asserted that the agency required more information to continue processing the request.

30.          In response CFS emailed the FSA on March 27, 2017 requesting an estimate on the number of responsive documents. The FSA responded on March 30, 2017, stating that the number of responsive documents was "in the thousands"; therefore, CFS needed to specify the exact FSA-850 CFS sought or from whom the document was submitted by.

31.          CFS replied on March 30, 2017, stating that the organization sought to prioritize Environmental Screening Worksheets submitted for the following actions: 1) commodity loans, 7 C.F.R. 799.31(b)(1)(ii); 2) financial assistance to supplement income, 7 C.F.R. 799.31(b)(6)(iii); 3) safety net programs, 7 C.F.R. 799.31(b)(6)(vi); 4) proposed actions involving another agency that is fully covered by one or more of that agency's categorical exclusions, 7 C.F.R. 799.31(b)(6)(x); and 5) loans for livestock purchases, 7 C.F.R. 799.32(d)(1)(ii).

32.          On April 12, 2017, CFS sent an email, acknowledging receipt of the FSA's April 11 voicemail. On April 19th and 20th, CFS followed up again and requested a phone call with the FSA. The FSA responded on April 21, 2017 and set up a call for April 24, 2017.

33.          At the time of the scheduled call on April 24, 2017, CFS sent an email to see if the FSA could still participate in the call. The FSA did not respond. On May 1, 2017, CFS sent an email to the FSA, acknowledging that CFS had not been able to speak with the FSA the previous week and, again, requested a phone call to narrow the request. CFS noted that the organization was considering legal action to compel a response.

34.          Later on May 1, 2017, CFS acknowledged that a call occurred on May 1, 2017 in regard to narrowing the scope of the March 23 FOIA Request. CFS requested that the scope encompass Pennsylvania, Maryland, and the Tulare & Kern Counties in California for the following FSA actions: 1) Commodity loans (7 CFR 799.31(b)(1)(ii); 2) Financial assistance to supplement income (7 CFR 799.31(b)(6)(iii); 3) Safety net programs (7 CFR 799.31(b)(6)(vi); 4) Proposed actions involving another agency that is fully covered by one or more of that agency's CEs (7 CFR 799.31(b)(6)(x); and 5) Loans for livestock purchases (7 CFR 799.32(d)(1)(ii). CFS

also specified that the organization only requests the Environmental Screening Worksheets for any of these actions in which the recipient is a CAFO within the EPA's definition.

35.     Between May 22, 2017 and June 20, 2017, CFS emailed the FSA four times to check on the status of the request in light of the narrowed scope. The FSA did not respond until June 22, 2017, noting that the FSA had called and requested a call back.

36.      On June 29, 2017, CFS and the FSA had a phone call in which CFS agreed to leave the request open rather than file an appeal of FSA's constructive denial. In a July 5, 2017 email, CFS noted that the parties agreed to this "on the understanding that [FSA] would begin processing the request on 6/30, or this week at the latest."

37.     On July 11, 2017, the FSA emailed a list of livestock operations to CFS, asking which operations CFS required information on. CFS responded on July 19, 2017 with a list of operations the organization prioritized: beef cattle ranching and farming, cattle-beef, cattle-feedlots, chicken-egg production, dairy-milk, dairy-cattle and milk, dairy-cattle breeding, hogs, hogs-breeding, poultry, poultry-chickens, poultry-turkey, and poultry-hatchery.

38.     On July 25, 2017, the FSA emailed CFS with the new search parameters and requested confirmation that the parameters were acceptable. CFS responded that they were acceptable as a beginning point to the search but reserved the right to seek additional records under the parameters of the original request after receipt of the documents.

39.     On August 11, 2017 CFS emailed the FSA to let the agency know that CFS had a new point person for this FOIA Request.

40.     On May 8, 2018 the FSA called CFS to ask if the organization still wanted the documents related to the March 23, 2017 FOIA Request. The FSA expressed that the agency wanted to close out the request.

41.         On August 1, 2018, CFS emailed the FSA to let the agency know the organization still wants the requested documents. CFS requested an estimated date of completion for the search and production of these documents.

42.         On September 17, 2018, CFS called the FSA to let the agency know that a new point person had been appointed and to ask what the agency intended to produce.

43.         On October 1, 2018, CFS emailed the main FSA FOIA office to see if the FSA continued to work on the request or if CFS should contact another person about the request. The FSA has not responded.

44.         Over a year and a half has passed since the FSA received the March 23, 2017 FOIA Request, yet the FSA has not provided an initial determination in response to the March 23, 2017 FOIA Request, supplied an estimated date of completion, made a determination on CFS's request for a fee waiver, or produced any responsive records.

45.         As of the date of this complaint, CFS has received no further communications from the FSA.

46.         None of FOIA's nine exemptions to the statute's disclosure mandate apply to the records that are responsive to the March 23 FOIA Request.

47.         CFS has been required to expend resources to prosecute this action.

## VI.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Defendant Failed to Comply with FOIA's Mandatory Determination Deadline

48.         The allegations made in all preceding paragraphs are realleged and incorporated by reference herein.

49.         The FSA violated FOIA by failing to make a determination on CFS's March 23 FOIA Request. 5. U.S.C. § 552(a)(6).

50.         CFS has a statutory right to receive a determination within the congressionally mandated deadline of twenty working days. *Id.*

51.         To date—over a year and a half since CFS filed the March 23 FOIA Request—the FSA has not provided a determination, notwithstanding the requirement of 5 U.S.C. § 552(a)(6)(A) of an agency response within twenty working days detailing the scope of the records the agency intends to produce and withhold, the reasons for making that determination, and an explanation of the process by which a requester can administratively appeal that determination.

52.         Even accounting for a ten-working-day extension, the FSA has still failed to meet the deadline by which an initial determination is required.

53.         The FSA's failure to make an initial determination with regard to the March 23 FOIA Request, thus unlawfully delaying its response beyond the deadline that FOIA mandates, has prejudiced CFS's ability to timely obtain public records. *Id.* § 552(a)(6)(A)(i).

54.         As such, CFS has exhausted the applicable administrative remedies with respect to the March 23 FOIA Request pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

55.         Due to the nature of CFS's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to the FSA in the foreseeable future.

56.         CFS's organizational activities will be adversely affected if the FSA continues to violate FOIA by failing to disclose responsive records as it has in this case.

57.         Unless enjoined and made subject to a declaration of CFS's legal rights by this Court, the FSA will continue to violate CFS's rights to receive public records under FOIA.

## SECOND CAUSE OF ACTION
### Defendant Failed to Conduct an Adequate Search for Responsive Records

58.         The allegations made in all preceding paragraphs are realleged and incorporated by reference herein.

59.         The FSA violated FOIA by failing to conduct an adequate search for responsive records pursuant to 5 U.S.C. § 552(a)(3)(C)-(D).

60.         CFS has a statutory right to have the FSA process its March 23 FOIA Request in a manner that complies with FOIA. *Id.*

61.         The FSA violated CFS's right when it unlawfully failed to undertake a search that is reasonably calculated to locate all records that are responsive to the March 23 FOIA Request, thus prejudicing CFS's ability to timely obtain public records.

62.         CFS has exhausted the applicable administrative remedies with respect to the March 23 FOIA Request pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

63.         Due to the nature of CFS's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to the FSA in the foreseeable future.

64.         CFS's organizational activities will be adversely affected if the FSA continues to violate FOIA by failing to disclose responsive records as it has in this case.

65.         Unless enjoined and made subject to a declaration of CFS's legal rights by this Court, the FSA will continue to violate CFS's rights to receive public records under FOIA.

### THIRD CAUSE OF ACTION
### Defendant Unlawfully Withheld All Responsive Records

66.         The allegations made in all preceding paragraphs are realleged and incorporated by reference herein.

67.         The FSA violated FOIA by failing to promptly disclose records that are responsive to CFS's March 23 FOIA Request. 5 U.S.C. § 552(a)(4)(B).

68.         CFS has a statutory right to the records it seeks, and there are no applicable exemptions under FOIA that provide a legal basis for the FSA to withhold these records from CFS. *See Id*. § 552(b)(1)-(9).

69.         To date, the FSA has not provided any records requested by CFS in the March 23 FOIA Request, notwithstanding the requirement of 5 U.S.C. § 552(a)(3)(A) and 5 U.S.C. § 552(a)(6)(C) to make agency records "promptly available."

70.         As such, the FSA is wrongfully withholding disclosure of information sought by CFS, information to which it is entitled and for which no valid disclosure exemption has been claimed. The FSA's unlawful withholding prejudices CFS's ability to timely obtain public records.

71.         CFS has exhausted the applicable administrative remedies with respect to the March 23 FOIA Request pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

72.         Due to the nature of CFS's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to the FSA in the foreseeable future.

14

73.      CFS's organizational activities will be adversely affected if the FSA continues to violate FOIA by failing to disclose responsive records as it has in this case.

74.      Unless enjoined and made subject to a declaration of CFS's legal rights by this Court, the FSA will continue to violate CFS's rights to receive public records under FOIA.

**FOURTH CAUSE OF ACTION**
**Defendant Failed to Provide Reasonably Segregable Portions of Any Lawfully Exempt Records**

75.      The allegations made in all preceding paragraphs are realleged and incorporated by reference herein.

76.      The FSA violated FOIA by failing to take reasonable steps to segregate and release nonexempt portions of lawfully exempt records in response to the March 23 FOIA Request. 5 U.S.C. § 552(a)(8)(A)(ii)(II).

77.      CFS has a statutory right to any reasonably segregable portion of a record that contains information that is subject to any of FOIA's exemptions. *Id*.

78.      To date, the FSA has failed to disclose any records to CFS, including nonexempt information that could be reasonably segregated and released in response to the March 23 FOIA Request, thus prejudicing CFS's ability to timely obtain public records.

79.      CFS has exhausted the applicable administrative remedies with respect to the March 23 FOIA Request pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

80.      Due to the nature of CFS's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to the FSA in the foreseeable future.

81.      CFS's organizational activities will be adversely affected if the FSA continues to violate FOIA by failing to disclose responsive records as it has in this case.

82.     Unless enjoined and made subject to a declaration of CFS's legal rights by this Court, the FSA will continue to violate CFS's rights to receive public records under FOIA.

### FIFTH CAUSE OF ACTION
### Defendant Failed to Grant a Fee Waiver as Required by FOIA

83.     The allegations made in all preceding paragraphs are realleged and incorporated by reference herein.

84.     The FSA violated FOIA by failing to grant—or indeed make any determination—on CFS's request for a fee waiver. 5 U.S.C. § 552(a)(4)(A)(iii).

85.     CFS is entitled to a waiver of fees associated with processing its March 23 FOIA Request because disclosure of responsive records will likely contribute significantly to public understanding of the FSA's operations or activities related to its compliance with NEPA in approving loans to CAFOs, and such disclosure is of no commercial interest to CFS. *Id*.

86.     CFS has exhausted the applicable administrative remedies with respect to the March 23 FOIA Request pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

87.     Due to the nature of CFS's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to the FSA in the foreseeable future.

88.     CFS's organizational activities will be adversely affected if the FSA continues to violate FOIA by failing to disclose responsive records and waive fees associated with such disclosure as it has in this case.

89.     Unless enjoined and made subject to a declaration of CFS's legal rights by this Court, the FSA will continue to violate CFS's rights to receive public records under FOIA.

**SIXTH CAUSE OF ACTION**
**Defendant Failed to Provide an Estimated Date of Completion as Required by FOIA**

90.        The allegations made in all preceding paragraphs are realleged and incorporated by reference herein.

91.        The FSA violated FOIA by failing to provide CFS with an estimated date of completion as required by 5 U.S.C. § 552(a)(7)(A)-(B).

92.        CFS has a statutory right to have the FSA process its March 23 FOIA Request in a manner which complies with FOIA. The FSA has violated Plaintiff's rights in this regard by its failure to provide—by any means—an estimated completion date for its response to the March 23 FOIA Request as required by FOIA. 5 U.S.C. § 552(a)(7)(A)-(B).

93.        The FSA's failure to inform CFS of an estimated completion date for the March 23 FOIA Request has prejudiced CFS's ability to timely obtain public records.

94.        CFS has exhausted the applicable administrative remedies with respect to the March 23 FOIA Request pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

95.        Due to the nature of CFS's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to the FSA in the foreseeable future.

96.        CFS's organizational activities will be adversely affected if the FSA continues to violate FOIA by failing to disclose responsive records as it has in this case.

97.        Unless enjoined and made subject to a declaration of CFS's legal rights by this Court, the FSA will continue to violate CFS's rights to receive public records under FOIA.

**REQUESTS FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

1.        Order Defendant to provide a lawful initial determination on Plaintiff's FOIA request as required by FOIA by a date certain;

2.        Order Defendant to conduct searches that are reasonably calculated to locate all records responsive to Plaintiff's March 23 FOIA Request with the cut-off date for searches being the date the searches are conducted, and to provide to Plaintiff, by a date certain, with all responsive records and reasonably segregable portions of lawfully exempt records sought in this action.

3.        Order Defendant to grant Plaintiff a fee waiver for its March 23 FOIA Request.

4.        Declare that Defendant unlawfully failed to make and communicate an initial determination on Plaintiff's March 23 FOIA Request as required by 5 U.S.C. § 552(a)(6)(A)(i).

5.        Declare that Defendant unlawfully failed to undertake a search and disclosure of all records responsive to Plaintiff's March 23 FOIA Request as required by 5 U.S.C. § 552(a)(6)(A)(i).

6.        Declare that Defendant unlawfully failed to provide Plaintiff with reasonably segregable portions of records which may be lawfully subject to a FOIA exemption as required by 5 U.S.C. § 552(a)(7)(b).

7.        Declare that Defendant unlawfully failed to grant Plaintiff a fee waiver for its March 23 FOIA Request.

8.        Declare that Defendant unlawfully failed to provide Plaintiff with an estimated date of completion as to the search and production of Plaintiff's March 23 FOIA Request as required by 5 U.S.C. § 552(a)(7)(B)(ii).

9.        Provide for expeditious proceedings in this action.

10. Award Plaintiff its costs and reasonable attorney fees pursuant to 5 U.S.C. §

552(a)(4)(E) or 28 U.S.C. § 2412.

11. Grant such other relief as the Court may deem appropriate.

Dated this 28th day of November, 2018.

       Respectfully submitted,

       CENTER FOR FOOD SAFETY,

       */s/ George A. Kimbrell*

       GEORGE A. KIMBRELL (WA 36050)
       Center for Food Safety
       917 SW Oak St. Suite 300
       Portland, Oregon 97205
       T: (971) 271-7372 / F: (971) 271-7374
       Email: gkimbrell@centerforfoodsafety.org

       KELLAN SMITH (*Pro Hac Vice* Pending)
       Center for Food Safety
       303 Sacramento Street, 2nd Floor
       San Francisco, CA 94111
       T: (415) 826-2770 / F: (415) 826-0507
       Email: ksmith@centerforfoodsafety.org

       *Counsel for Plaintiff*